## Western Union Telegraph Company v. Holsomback.

(Decided September 23, 1915.)

### Appeal from Franklin Circuit Court.

Telegraphs and Telephones—Mental Anguish—Damages.—If the sendee of a delayed death telegram had ample time to attend the funeral after he received the telegram, he has no claim for damages against the telegraph company for mental anguish caused by his failure to attend the funeral.

RICHARDS & HARRIS, O'REAR & WILLIAMS and GEO. H. FEARONS for appellant.

SCOTT & HAMILTON and G. H. BRIGGS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER.—Reversing.

The appellee, Edgar Holsomback, lived in Frankfort, where he was employed as a guard at the State Prison. His sister was the wife of James Ashurst, who lived in Somerset, Kentucky.

On Friday, November 28th, 1913, Clarence Smith, a nephew of Holsomback, sent him the following telegram:

"Somerset, Ky., November 28, 1913.

"Edgar Holsomback, State Prison,
  "Frankfort, Ky.
    "Uncle Jim died at seven o'clock tonight.
                    "CLARENCE.  8:15 P. M."

The message was received at the Frankfort office of the Western Union Telegraph Company, at 8:15 P. M., of the same day; and at 8:30 P. M., it was given to Richard Brown, a messenger boy 14 years of age for delivery. Brown carried the message to the State Prison, but could not deliver it to Holsomback because he had left the prison about six o'clock and had gone to his home, on Montgomery Avenue. Deputy Warden Lykens told Brown that Holsomback lived on Holmes Street, and directed Brown to deliver the telegram there. Brown made no further attempt to deliver the telegram that night, but returned it to the company's office.

Holsomback testified that he lived on Montgomery Avenue, and that he remained at home throughout the night, on November 28th. It further appears that Hol-

somback's name was not in the Frankfort City Directory, or in the telephone directory.

The telegram was delivered at the prison gate on the next day (Saturday) at 8:40 A. M., and was carried by a prison messenger and delivered to Holsomback at 8:45 A. M. As soon as Holsomback could be relieved from duty, he went to the railroad offices for the purpose of ascertaining the train schedules from Frankfort to Lexington, and from Lexington to Somerset. He found that he could leave for Lexington by trolley car at 10:30 A. M.; that trolley cars left Frankfort for Lexington at intervals of every hour and a half during the afternoon; and that trains left Lexington for Somerset at 9:45 A. M., at 10:35 A. M., and at 9 P. M. The trip from Frankfort to Lexington could be made in an hour and a half, and the trip from Lexington to Somerset required about three hours. The next trolley car which left Frankfort at 10:30 A. M. would not arrive at Lexington in time for a passenger to take the 10:35 A. M. train for Somerset; but by leaving Lexington at 9 o'clock P. M., one could arrive at Somerset shortly before midnight, of the same day.

But as Ashurst had died on Friday, Holsomback thought he would be buried on Saturday afternoon, because, as he testified, under the custom of the neighborhood where his brother-in-law lived, the body of a deceased person was not held unburied longer than one night; and Ashurst having died on Friday evening at 7 o'clock, he would be buried not later than Saturday afternoon.

Having found that he could not reach Somerset in time for the funeral, if it should be held on Saturday afternoon, Holsomback sent the following telegram, in answer to the one he had received:

"11-29-'13.

"Clarence Smith,
        "Somerset Ky.

        "Received message at 9 A. M. Impossible to get home.

        "E. L. HOLSOMBACK."

Holsomback says that after the telegram had been sent to Smith, Searcy, the telegraph operator at Frankfort, agreed to ascertain when the funeral would be held, but that he did not do so. Searcy contradicts Holsom-

back in this respect; and there is no other testimony upon this point.

The funeral and burial, however, did not take place until Sunday afternoon; and it is conceded by Holsomback, and established by other witnesses beyond a doubt, that Holsomback could have reached Somerset before midnight of Saturday, which would have given him ample time to attend the funeral and burial, which was held on Sunday afternoon at Bradley's Chapel, five miles from Somerset.

Holsomback brought this action against the Western Union Telegraph Company to recover damages for the mental anguish he had suffered by having been prevented from attending the funeral and burial of his brother-in-law by reason of the delay in the delivery of the telegram.

The answer denied all negligence, or that the delay in delivering the telegram prevented Holsomback from attending the funeral of his brother-in-law, and affirmatively set up Holsomback's own negligence in his failure to attend the funeral, although he had ample time to do so, in bar of any recovery.

The trial resulted in a verdict and judgment for $500.00 for the plaintiff, and the company appeals.

For a reversal the appellant insists: (1) That its motion for the court to peremptorily instruct the jury to find for the defendant, should have been sustained, because the uncontradicted proof clearly shows, that notwithstanding the delay in delivering the telegram, Holsomback could have arrived at Somerset in ample time to attend the funeral on Sunday afternoon; (2) that Holsomback not being a blood relation of James Ashurst, the deceased, but only his brother-in-law, could not recover damages for mental anguish sustained by a failure to attend his funeral; (3) that the court improperly submitted to the jury the question whether the appellee was prevented by the delay in the delivery of the telegram from being with his sister (Mrs. Ashurst) in her bereavement, she not being mentioned in the telegram, and the company having no notice of her existence; and (4) that the trial court erred in permitting appellee to testify in regard to the relationship between himself and his brother-in-law and his sister; and, again, in permitting appellee to testify to the time it was customary to hold bodies after burial, in the community where Ashurst had died.

In view, however, of the conclusion we have reached concerning the first ground above assigned for a reversal, which will effectually dispose of the case, it will be unnecessary to consider the other grounds.

The uncontradicted proof shows that appellee could easily have reached Somerset by Saturday midnight, and that the funeral was not held until Sunday afternoon. The appellee admits this to be true, but would excuse himself upon the ground that he thought the funeral would be held Saturday afternoon instead of Sunday afternoon. The only reason he had for this belief was, his asserted knowledge of the custom of the neighborhood in which Ashurst resided, as to the burial of deceased persons. But, is the company to be held responsible for the appellee's mistake in this respect? We think not. Holsomback did not take the trouble to ascertain when the funeral would be held; and it subsequently appeared that his supposition as to the time of the burial was entirely wrong.

He failed to attend the funeral because he assumed, without sufficient reason, that the funeral would be held on Saturday. When he answered Clarence Smith's telegram at 3 P. M., on Saturday, he merely said, "Message received at 9 A. M. Impossible to get home." He did not say why it was impossible for him to get home, or that the shortness of the time before the funeral was the reason why it was impossible.

If he had followed the suggestion of the telegraph operator and added something to his telegram showing his reason for not going to Somerset, there is little doubt he would have been told the funeral would be held on Sunday, instead of Saturday as he erroneously supposed.

Waiving the question whether the failure to deliver the telegram before Saturday morning might be considered negligence upon the part of the company, the conclusion is inevitable that Holsomback's failure to attend the funeral was due wholly to his own failure to make the attempt.

As the delay on the part of appellant in the delivery of the telegram in no way prevented Holsomback from attending the funeral, he had no cause of action by reason of the delay, and the company's motion for a peremptory instruction should have been sustained.

Judgment reversed.